**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renmai Chen, | No. CV-26-01334-PHX-DWL (ASB) |
| Petitioner, | |
| v. | **ORDER** |
| Kristi Noem, et al., | |
| Respondents. | |

On February 25, 2026, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 seeking her release from immigration detention. (Doc. 1.) The Court ordered Respondents to show cause why the petition should not be granted. (Doc. 4.) The petition is now fully briefed. (Docs. 6, 9.)

## I.    Background

Petitioner is a citizen of China who entered the United States on October 27, 2022, was taken into immigration custody, and was subsequently released on parole. (Doc. 6-1 ¶¶ 5-7.) On September 22, 2024, Petitioner was encountered attempting to reenter the United States and was taken back into immigration custody. (*Id.* ¶ 8.) On March 25, 2025, an immigration judge ("IJ") ordered Petitioner removed but granted withholding of removal to China. (*Id.* ¶ 9.) Both Petitioner and DHS waived appeal, and the IJ's order became final that same day. (*Id.*)

In April and May 2025, ICE inquired with Panama, South Korea, and Brazil about the possibility of removing Petitioner to those countries, but they all declined. (*Id.* ¶¶ 10-

12.)  In September 2025, ICE "began the process to seek third party country removal and submitted an initial request with the DHS ICE ERO Removals Division." (*Id.* ¶ 13.)  That same month, ICE received Petitioner's original passport. (*Id.* ¶ 14.)  In January 2026, ICE inquired with Singapore about the possibility of removing Petitioner to that country, but Singapore declined. (*Id.* ¶ 19.)  As of February 11, 2026, Petitioner's removal has been "referred to the United States Department of State and remains pending at this time." (*Id.* ¶ 21.)

## II. Legal Standard

Under 8 U.S.C. § 1231(a)(1), the government has a 90-day period—called the "removal period"—in which to remove an alien after a removal order becomes final.  Under § 1231(a)(2), detention during the removal period is mandatory.

Under § 1231(a)(6), if the government is unable to effect removal within the 90-day removal period, continued detention becomes discretionary.  That discretion, however, is not unfettered and indefinite detention is not permitted.  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("[W]e read an implicit limitation into the statute before us.  In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention.").  In *Zadvydas*, the Supreme Court held that six months is a "presumptively reasonable period of detention." *Id.* at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*  If, after considering the evidence, a court finds that "removal is not reasonably

- 2 -

foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

### III.   Discussion

As of the date of this order, Petitioner has been detained for more than one year since her removal order became final.  Thus, the initial burden falls onto Petitioner to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  If Petitioner meets that burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner contends that "[s]ince China will not be considered as a removal destination (due to the withholding order), ICE would have to find an alternate country" (Doc. 1 ¶ 21), yet "[a]s Respondents indicate in the exhibit filed with their Response, all third-party states have refused to accept her as a deportee" (Doc. 9 at 2).  The Court agrees that, under these circumstances, Petitioner has met her initial burden of establishing good reason to believe there is no significant likelihood of her removal in the reasonably foreseeable future.  The burden thus shifts to Respondents to rebut that showing "with evidence sufficient." *Zadvydas*, 533 U.S. at 699.

Respondents have failed to do so.  To date, ICE has asked four countries to accept Petitioner and all four countries rejected that request.  Moreover, Respondents indicate they are no longer even responsible for attempting to identify a potential third country to which Petitioner might be removed—instead, the process has been "referred to the United States Department of State."  Nor have Respondents provided any evidence about how long this referred process is expected to take, or the likelihood that this referred process will be successful, or whether ICE and/or the Department of State have had any success in completing the third-country removal of any Chinese national.  *Compare Prieto-Romero v. Clark*, 534 F.3d 1053, 1063-65 (9th Cir. 2008) (rejecting prolonged detention claim where (1) "the government introduced evidence showing that repatriations to Prieto-Romero's country of origin, Mexico, are routine" and (2) the delay in removal was caused by the petitioner's request for "[j]udicial review, [which] unlike the administrative process

the government invoked in [a different case], is subject to strict procedural rules" that serve as an "independent, external constraint" and provide "satisfactory assurance that [the process] will be resolved with reasonable expedition") (cleaned up).  At most, then, Respondents have identified a possibility that Petitioner might be removed to some unspecified third country at some unspecified point in the future following the completion of a generically described administrative process that is not subject to any external time constraints.  Even acknowledging that "*Zadvydas* does not enshrine a rigid legal framework whereby immigration officials must move at warp speed to effectuate removal before an artificial deadline expires," *Tran v. Rivas*, 2026 WL 594811, *2 (D. Ariz. 2026), the Court cannot see how Respondents' meager evidentiary showing here could be deemed sufficient to establish a significant likelihood of removal in the reasonably foreseeable future, particularly where Petitioner has already been in custody for more than a year since her removal order became final.  *Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

Accordingly,

**IT IS ORDERED** that:

(1)    The petition (Doc. 1) is **granted**.

(2)    Respondents must **immediately release** Petitioner from custody.

(3)    Within **three business days** of this order, Respondents must file a notice of compliance.

(4)    The Clerk of Court shall enter judgment accordingly and close this case.

Dated this 9th day of April, 2026.

Dominic W. Lanza
United States District Judge